UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: NAVY CHAPLAINCY : | Misc. Action No.: 07-0269 (RMU) |
| : | |
| _____ : | Document No.: 3 |

**MEMORANDUM OPINION**

DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**I.  INTRODUCTION**

In the latest phase of this continuing dispute between the plaintiffs (non-liturgical naval chaplains and their endorsing agencies) and the defendants (the United States Navy and various naval officers) ("the Navy"), the plaintiffs move for a preliminary injunction to prevent the Navy from affording preferential treatment to Catholic chaplains by allowing them to remain on active duty past the statutory separation age in order to qualify for retirement pay.  The plaintiffs claim that this alleged policy constitutes a denominational preference in violation of the Navy's own regulations as well as the Establishment Clause of the First Amendment and the Due Process Clause of the Fifth Amendment.  The Navy demurs, maintaining that its regulations authorize the contested policy, that the policy is a permissible accommodation of religion under the Free Exercise Clause of the First Amendment and that the plaintiffs lack standing to challenge the policy in the first instance.  Because the court concludes that the plaintiffs do not demonstrate standing to bring this claim, it denies their motion.

## II.  BACKGROUND

### A.  Factual History

Because the court has published over a dozen opinions in this case, it will dispense with a full recitation of its lengthy and convoluted factual and procedural background.[1]  Pertinent to the instant motion, the plaintiffs identify 23 reserve Catholic chaplains retained on active duty past age 60 for the purpose of enabling their pensions to vest by achieving 20 years of service.  Pls.' Mot. for a Prelim. Inj. at 1-2.  Seven chaplains over the age of 67 were designated as "Retired Reservists Recalled to Active Duty" even though, the plaintiffs argue, they have not met the criteria for that designation.  *Id.* at 2.  The plaintiffs' motion requests a preliminary injunction to (1) stop the denominational preference policy; (2) enjoin future violations; and (3) require the defendants to comply with the discharge statutes.  *Id.*

### B.  Procedural History

This motion returns to the court via a reversal from the D.C. Circuit holding that an allegation of a violation of the Establishment Clause *per se* satisfies the irreparable injury element for an injunction.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006).  The Circuit remanded for consideration of whether the plaintiffs can meet the remaining elements necessary for obtaining an injunction, namely, a likelihood of success on the merits, a lack of substantial injury to other parties and the promotion of the public interest.  *Chaplaincy*, 454 F.3d at 305.

---

[1]    For a detailed account of the factual allegations, see *Adair v. England*, 183 F. Supp. 2d 31, 34-38, 40-45 (D.D.C. 2002).

### III.  ANALYSIS

#### A.  Legal Standard for a Preliminary Injunction

This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *Id.* at 747 (quoting *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

When a party seeks a mandatory injunction – to change the status quo through action rather than merely to preserve the status quo – typically the moving party must meet a higher standard than in the ordinary case: the movant must show "clearly" that she is entitled to relief or that extreme or very serious damage will result. *Adair v. England*, 217 F. Supp. 2d 1, 3 n.6 (D.D.C. 2002); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001); *see also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (noting that "[i]n cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction"); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025-26 (2d Cir. 1985) (same); *Martinez v. Mathews*,

544 F.2d 1233, 1243 (5th Cir. 1976) (same).  The D.C. Circuit, however, has not yet adopted or, for that matter, rejected this rule.  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n. 31 (D.C. Cir. 1984) (stating that "[i]n this circuit, however, no case seems to squarely require a heightened showing, and we express no view as to whether a heightened showing should in fact be required"); *see also Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 159 F.3d 636, at *1 (D.C. Cir. 1998) (unpublished table decision) (declining to "reach the question whether the district court erred in holding that the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction").

### B.  Likelihood of Success on the Merits

The plaintiffs argue that they are likely to succeed on their claim because they possess the standing necessary to challenge the Navy's policy and because the Navy's policy violates Navy Regulations and the First and Fifth Amendments.  Because the court concludes that the plaintiffs fail to demonstrate standing, the court foregoes further analysis of the merits.

### 1.  Standing

### a.  Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies.  U.S. CONST. ART. III, § 2, cl. 1.  These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 102 (1998).  Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing Federal Rule of Civil Procedure 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury-in-fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

If the plaintiff is an association, it may demonstrate standing as long as "its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires members' participation in the lawsuit." *Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n*, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

### b. The Plaintiffs' Pleadings Do Not Demonstrate Standing

The Navy disputes the plaintiffs' standing to bring suit on the grounds that they fail to demonstrate a personal, particularized injury. The Navy notes that "[m]any of the individual plaintiffs are no longer on active duty, Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj. ("Defs.' Opp'n") at 11, arguing therefrom that any injury the plaintiffs may have suffered is now beyond prospective relief, *id.* at 9-10. As for those plaintiffs remaining on active duty, the Navy contends that they have not "demonstrated that they are eligible for and were denied retention over age 62." *Id.* The plaintiffs counter that "those chaplains who were illegally retained are still on active duty," a state of affairs that allegedly violates the Establishment Clause because it communicates a message of sectarian preference. Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. ("Pls.' Reply") at 12. The plaintiffs clarify that they "do not assume that non-liturgicals sought and were denied the opportunity for extensions past the statutory cutoff or placement into the Retired Reserve prior to being entitled to retired pay." Pls.' Reply at 11. Rather, they argue that the Navy has instituted an unconstitutional preference system that, by violating the Establishment Clause, "communicates" a "message of preference," which constitutes a *per se* injury. *Id.* at 12-13.

### I. The Plaintiffs Have not Demonstrated a Particularized Injury-In-Fact

A superficial reading of the D.C. Circuit's ruling remanding this matter might support the plaintiffs' position that standing exists. There, the Circuit held that a violation of the Establishment Clause constitutes a *per se* irreparable injury for the purposes of requesting a preliminary injunction. *Chaplaincy*, 454 F.3d at 305. In the bulk of cases, a finding of an irreparable injury *a fortiori* signals the existence of an injury-in-fact sufficient to confer standing. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995) (conceding that while "inquiry [regarding irreparable injury] overlaps with the standing issue somewhat" grounds supporting a motion for a preliminary injunction "must show more" than mere standing). But, among the justiciability doctrines feeding into the Supreme Court's pool of jurisprudence, the Establishment Clause is, it must be admitted, a queer duck. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 n.31 (5th Cir. 2001) (recognizing that "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases").

As a general rule, a federal taxpayer's interest in ensuring that Treasury funds are not spent in violation of the Constitution is too nebulous to establish the redressable "personal injury" required for Article III standing. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923). The Supreme Court has carved a narrow exception, however, declaring that federal taxpayer standing does exist for Establishment Clause challenges to the constitutionality of exercises of congressional power under the taxing and spending clause of Art. I, § 8. *Flast v. Cohen*, 392 U.S. 83 (1968); *Hein v. Freedom From Religion Found., Inc.*, 127 S.Ct. 2553 (2007); *but see Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 500 (5th Cir. 2007) (DeMoss concurring) (accusing the Supreme Court of "speak[ing] out of both sides of its mouth" by

creating a "double standard" in which "it implicitly assumes standing in [Establishment Clause] cases where the alleged injury, in a non-Establishment Clause case, would not get the plaintiff into the courthouse").

Presumably, it is this exception that the D.C. Circuit had in mind in its recent ruling. The appeals court concluded that a violation of the Establishment Clause constitutes an irreparable injury for the purposes of a preliminary injunction. The court explicitly noted that its conclusion "presupposes, of course, that the party has standing to allege such a violation." *Chaplaincy*, 454 F.3d at 304 n.8; *see Gettman v. Drug Enforcement Admin.*, 290 F.3d 430, 436 (D.C. Cir. 2002) (affirming that an appellate court may assume standing exists without also deciding so). And when outlining a hypothetical case of a state legislature erecting an enormous Christian cross in front of the statehouse, the court observed that, in such a situation, "an offended resident would have taxpayer standing to seek removal of the cross." *Id.* at 304 (citing *Flast*, 392 U.S. at 83 ).

The plaintiffs, however, urge the court to conclude that the Circuit found standing for the plaintiffs in their own right because a violation of the Establishment Clause communicates a "message" of sectarian preference. Pls.' Reply at 12-13. Specifically, the plaintiffs argue that allowing the Catholic chaplains who were allegedly illegally retained to remain on active duty "is a continuing violation of the Establishment Clause because it clearly communicates a message of preference." *Id.* at 12. The plaintiffs concede that none of them has suffered the particular and concrete injury of having "sought and [been] denied the opportunity for extensions past the statutory cutoff or placement into the Retired Reserve prior to being entitled to retired pay." *Id.* at 11. Nor have the plaintiffs, among whom are four active Navy service-members, shown that any of them are destined to encounter discrimination. *See generally* Pls.' Compls. Even were

9

they to allege that they might encounter such discrimination in the future, a case that rests on "ifs" stands not on solid ground but on stilts of conjecture.  *Cf. O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (refusing to recognize injury based on the hypothetical that if the plaintiffs violated the law in the future and if they were prosecuted they would be subjected to unconstitutional criminal procedure practices in the courts).  Because the plaintiffs have not showed that any of them will be subjected to the Navy's allegedly discriminatory policy, *Saunders v. Caldera*, 193 F. Supp. 2d 1, 5 (2001), the court cannot embrace the notion that they have demonstrated a "threatened injury [that] is certainly impending." *Friends of the Earth*, 528 U.S. at 190.

In fact, the plaintiffs point to no factor distinguishing their alleged injury from that of any other Navy service-member or even (from a wider perspective) that of a general federal taxpayer.  The plaintiffs may find the alleged message of preference invidious, but "such [a stigmatizing] injury accords a basis for standing only to 'those persons who are personally denied equal treatment by the challenged discriminatory conduct . . . .'"  *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler v. Mathews*, 465 U.S. 728, 739-740 (1984)).  The plaintiffs seek to invoke the abstract principle underlying the Establishment Clause to evoke their personal standing.  But because such an injury is derived from general principles rather than particular, concrete facts, it amounts to only an "abstract injury in nonobservance of the Constitution," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. at 223 n.13,  applicable to all and particular to none, which "is not enough" to establish standing, *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

### ii. The Plaintiffs Have not Demonstrated Injury Based on Federal Taxpayer Status

Thus, if the plaintiffs are to successfully establish their standing in this matter, they must do so under the narrow Establishment Cause exception to taxpayer standing. Yet here, too, the plaintiffs' case buckles for lack of solid footing. Under limited circumstances, a plaintiff's status as a taxpayer will "supply the personal stake essential to standing." *Schlesinger*, 418 U.S. at 227. The plaintiff must show "a logical nexus between the (taxpayer) status asserted and the claim sought to be adjudicated." *Flast*, 392 U.S. at 102. Thus, the spending challenged must be specifically appropriated for the challenged activity. *Hein*, 127 S.Ct. at 2567 (characterizing as an inadequate basis of standing a challenge to "unspecified, lump-sum 'Congressional budget appropriations' for the general use of the Executive Branch") (quotations omitted). And, second, "the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power." *Id.*

The plaintiffs here cannot make such a showing, as they do not challenge a congressional enactment under Art. I, § 8, but rather the action of the Executive Branch in extending the tenures of Navy service-members. The plaintiffs argue, referencing the case of *Katcoff v. Marsh*, that if law school students have taxpayer standing to challenge the constitutionality of the Army's chaplaincy program, then former and current naval service-members should have standing to challenge the Navy's chaplaincy program. Pls.' Reply at 13-14 (citing *Katcoff v. Marsh*, 755 F.2d 223, 224 (2d Cir. 1985)). But *Katcoff* is distinguishable. The plaintiffs in *Katcoff* specifically challenged the decision of Congress to finance the Army's chaplaincy program in the first instance, not any particular decision by the Executive branch in running the chaplaincy. *Katcoff*, 755 F.2d at 229 (addressing the plaintiffs' argument that government funding of a

11

chaplaincy program is unnecessary). Here, on the other hand, the plaintiffs challenge the Executive branch's management of a chaplaincy program. They do not – and they cannot – identify any congressional statute authorizing the Navy to discriminate through religious preferences in extending service-members' tenures. *Compare Flast*, 392 U.S. at 90 (framing the alleged violation as an express congressional authorization of expenditures to private schools both secular and religious) *with* 10 U.S.C. § 5142(a) (authorizing simply the organization of a Chaplain Corps "in accordance with regulations prescribed by the Secretary of the Navy"). Put simply, the injury that they allege does not flow from any particular spending decision by Congress. That being so, they cannot rely on taxpayer standing.

### iii. The Plaintiff-Associations Do Not Have Standing in their own Right or on Behalf of their Plaintiff-Members

The Navy argues that the plaintiff-associations, Chaplaincy of Full Gospel Churches ("CFGC") and Associated Gospel Churches ("AGC"), do not have standing to bring this claim, either. The Navy reasons that, although the court did previously find that CFGC possessed associational standing, "it did not rule that CFGC had standing to challenge the specific practice at issue here," and the court "tied [CFGC's] standing to the standing that each individual CFGC-endorsed chaplain would have to challenge the alleged conduct." Defs.' Opp'n at 13. The plaintiffs do not respond, other than to state: "The law of this case remains that CFGC, and by implication AGC, have standing to seek prospective relief on behalf of their members." Pls.' Reply at 13 (citing Mem. Op. (Aug. 17, 2000)).[2]

---

2   The plaintiffs do not argue that Chaplaincy of Full Gospel Churches or Associated Gospel Churches has standing to sue in its own right – a proposition already denied by the court and not warranting reexamination. Mem. Op. (Aug. 17, 2000) at 10.

An association has standing to sue on behalf of its membership when: (a) its members have standing to sue in their own right; (b) the organization seeks to vindicate interests close to its own purposes; and © neither the claim nor the relief requires the participation of individual members in the suit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975). In its August 17, 2000 memorandum opinion, the court concluded that CFGC had standing to survive a motion to dismiss because the individual plaintiffs had standing to pursue their claims at issue then. Mem. Op. (Aug. 17, 2000) at 11 (referencing claims of being denied advancement as well as receiving unequal treatment in assignments, worship services and job evaluations). Today, however, the plaintiffs articulate a different injury – the communication of a message of religious preference by the Navy's extension of tenures for Catholic Navy service-members. The court has explained above why this allegation cannot establish the plaintiffs' standing to sue in their own right. The association-plaintiffs cannot rely upon their prior standing to sue affirmed by the court on different injuries. Therefore, they too cannot bring this case.

Because standing is a jurisdictional prerequisite to suit, the court need not examine the plaintiffs' further arguments in support of their motion for a preliminary injunction. *Steel Co.*, 523 U.S. at 101 n.3 (1998) (affirming that a federal court has leeway to choose among threshold grounds for declining to consider a case on the merits).

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for a preliminary injunction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of October, 2007.

RICARDO M. URBINA<br>
United States District Judge