UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: NAVY CHAPLAINCY | : | Civil Action No.:  07-0269 (RMU) |
| | : | |
| | : | Re Document No.:  95 |

## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' sixth motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a).  The plaintiffs claim that the Navy Chaplain Corps' selection board process, in which Navy chaplains cast votes resulting in the promotion of other chaplains, violates the Establishment Clause of the First Amendment to the United States Constitution.  More specifically, the plaintiffs allege that the Navy's selection board process results in denominational favoritism that advantages Catholic and liturgical chaplains while disadvantaging non-liturgical chaplains.[1]  The plaintiffs contend that this alleged systematic bias has left non-liturgical chaplains underrepresented in the Navy.  For the following reasons, the court denies the plaintiffs' motion for a preliminary injunction.

---

[1] The term "non-liturgical" denotes Christian denominations or faith groups that do not have a formal liturgy or order in their worship service. *Adair*, Mem Op. (Jan. 10, 2002) at 5.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The court has recounted the rich factual history in this case on numerous occasions, and forgoes yet another recitation of the facts.[2]  *See, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 293-96 (D.C. Cir. 2006); *Adair v. England*, 183 F. Supp. 2d 31, 34-38 (D.D.C. 2002).  For purposes of this memorandum opinion, the court notes that the plaintiffs claim that the Department of the Navy and several of its officials (collectively, "the defendants") have discriminated against the plaintiffs on the basis of their religion, by establishing, promoting and maintaining "illegal religious quotas" and religious preferences in their personnel decision-making.  *Adair et al. v. England et al.*, Civ. No. 00-566 ("Adair"), 4th Am. Compl. ¶ 1; *Chaplaincy of Full Gospel Churches et al. v. England et al.*, Civ. No. 99-2945 ("CFGC"), 4th Am. Compl. ¶ 1; *Gibson v. Dep't of Navy*, Civ. No. 06-1696 ("Gibson"), Am. Compl. ¶ 1.  More specifically, the plaintiffs allege that the Navy is discriminating against members of "non-liturgical" religions when, *inter alia,* making promotion decisions.  *Adair*, Mem Op. (Jan. 10, 2002) at 5-9.

Three cases have been commenced, all raising "substantially similar constitutional challenges to the Navy Chaplaincy program."  *In re Navy Chaplaincy*, Miscellaneous No. 07-269, Mem. Order (June 18, 2007) at 3-4.  The court ultimately determined that these cases, *Adair v. England, CFGC v. England* and *Gibson v. Department of the Navy*, should be consolidated under the caption *In re Navy Chaplaincy*.  *See id.* at 4.

---

[2]  On June 18, 2007, the court consolidated these related matters and created a new miscellaneous action for the three consolidated cases, captioned *In re Navy Chaplaincy*. *See* Mem. Order (June 18, 2007).

Although their constitutional challenges are nearly identical, the plaintiffs in each case are varied. The *Adair* plaintiffs are 17 current and former non-liturgical chaplains in the Navy. *Adair*, Mem. Op. (Jan. 10, 2002) at 2. In the *CFGC* case, the plaintiffs are composed of an endorsing agency for non-liturgical military chaplains called the Chaplaincy of Full Gospel Churches, and seven of its individual members. *Id.* Lastly, the *Gibson* plaintiffs consist of 41 individual plaintiffs and one organizational plaintiff, the Associated Gospel Churches, which is "a fellowship of non-denominational, evangelical churches." *Gibson*, Am. Compl., ¶ 3.

As is immediately pertinent here, the Navy Chaplain Corps' selection process allows Navy chaplains to cast votes for or against chaplains, potentially resulting in the promotion of chaplains to higher ranks and larger pay. *See generally* Pls.' Mot. for Prelim. Inj. According to the plaintiffs, chaplain selection board members vote by pressing one of five buttons (ranging from zero to one hundred in twenty-five degree increments) that are concealed in a sleeve. *Id*. ¶ 3. If one chaplain on the selection board presses the button for "zero," that single vote "zeroes out" the other votes, resulting in the likely non-promotion of a candidate. *Id*. ¶ 4. Because the voting buttons are concealed in a sleeve, chaplains' votes are and remain secret. *Id.* ¶ 3.

As a result of this process, the plaintiffs now move for preliminary injunction, asking the court to enjoin the Navy from "(1) the use of the Chief of Chaplains (the 'Chief') or his Deputy as chaplain selection board president; (2) the use of secret votes thereon with no accountability; and (3) placing chaplains on chaplain selection boards without effective guarantees that the power to distribute government benefits will be used solely for secular, neutral and non-ideological purposes." *Id*. at 1. The plaintiffs have recently discovered that the government intends to proceed imminently with the selection board process, highlighting the plaintiffs' need

3

to swiftly prevent the government from beginning its promotion cycle. With the plaintiffs' motion ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Provided the plaintiff demonstrates a likelihood of success

on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B. The Court Denies the Plaintiffs' Motion for a Preliminary Injunction
#### 1. The Court Has Jurisdiction to Entertain the Plaintiffs' Claims

As a threshold matter, the defendants challenge the court's jurisdiction to grant any injunctive relief, and to entertain the plaintiffs' claims insofar as they relate to the promotion boards. According to the defendants, "[t]he court does not possess jurisdiction to enjoin selection board proceedings" because Congress has statutorily limited the relief available by enacting 10 U.S.C. § 628. The plaintiffs respond that § 628 does not specifically address injunctions, and argue that "[h]ad [Congress] wanted to" deprive the court of jurisdiction in this

regard, it would have chosen more specific language. Pls.' Reply at 10. Additionally, the plaintiffs assert that the court has jurisdiction "to enjoin unconstitutional action by government officials." *Id.*

In 2001, Congress enacted legislation that limits a court's jurisdiction over those actions filed on or after December 28, 2001 which seek judicial review of a decision or recommendation by certain military boards. *See* 10 U.S.C. § 628(h). More specifically, the relevant provisions require that a person seeking judicial review of a decision made by a "promotion board" must first exhaust his or her administrative remedies by resorting to a "special selection board."[3] *See* 10 U.S.C. § 628(h). Section 628(h)(1) forbids any "court of the United States" from considering "a claim based to any extent on the failure of a person to be selected for promotion by a promotion board," unless "the person has first been referred by the Secretary concerned to a *special selection board* convened under [10 U.S.C. § 628] and acted upon by that board and the report of the board has been approved by the President." *Id.* § 628(h)(1) (emphasis added). Furthermore, 10 U.S.C. § 628(h)(2) states:

> No official or court of the United States may, with respect to a claim based to any extent on the failure of a person to be selected for promotion by a promotion board –
>
> except as provided in subsection (g), grant any relief on the claim unless the person has been selected for promotion by a special selection board convened under this section to consider the person for recommendation for promotion and the report of the board has been approved by the President.

---

[3] A "special selection board" is a board convened to consider an officer's eligibility for a promotion, *see* 10 U.S.C. § 628, or to review the decision by a selection board not to recommend an officer (or a former officer) for promotion, *see* 10 U.S.C. § 14502.

The plain language of these provisions indicates that a district court may review a promotion board's decisions only after a special selection board first considers a plaintiff's claim. 10 U.S.C. § 628(h); *see also Blackmon-Malloy v. U.S. Capitol Police Bd.,* 575 F.3d 699, 704 (D.C. Cir. 2009) (observing that determining whether a statute's exhaustion requirements are jurisdictional "is a question of statutory interpretation"); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 44 (1991) (determining that the district court lacked jurisdiction because the relevant statute had "provide[d the Court] with clear and convincing evidence that Congress intended to deny the District Court jurisdiction" to review the case); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 101-103 (D.C. Cir. 1986) (noting that "the inclusion of a detailed grievance procedure to resolve [] disputes . . . was the strongest evidence of Congressional intent" that a party exhaust administrative remedies before resorting to the federal courts"). Thus, a court lacks jurisdiction to review decisions by the promotion boards and special selection boards if a plaintiff fails to exhaust his or her administrative remedies under § 628. *See Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1095 (D.C. Cir. 2001) (determining that Congress's "unequivocal intent to cut off judicial review" for a specific type of claim meant that the court lacked jurisdiction over that claim); *Cotrich v. Nicholson*, 2006 WL 3842112, at *2 (M.D. Fla. Dec. 19, 2006) (dismissing the case, *inter alia*, for lack of jurisdiction due to the plaintiff's failure to exhaust the administrative procedures in § 1558). Additionally, the court may not grant "any relief" unless certain procedural hurdles have been satisfied, *i.e.* the convening of a special selection board and approval of that board's report by the President. 10 U.S.C. § 628(i).

There is, however, one critical exception carved out by Congress. Section 628(i) states that "nothing in this section" limits "the jurisdiction of any court of the United States under any provision of law to determine the validity of any law, regulation, or policy relating to selection boards." 10 U.S.C. 628(i). Stated otherwise, under § 628(i), a court retains jurisdiction to review the actions by a selection or promotion board so long as the claim seeks that the court decide the "validity of any law, regulation, or policy relating to selection boards." 10 U.S.C. §§ 1558(g), 628(i).

In reviewing § 628(i) and § 628(h), the court is persuaded that Congress did not intend to deprive this court of jurisdiction to review the alleged unconstitutional policies that guide a promotion board. The plaintiffs specifically challenge the policies used by the Navy to determine the composition and decision-making of the promotion boards. Thus, because the plaintiffs' claims challenge the validity of policies relating to promotion boards, the court concludes that it maintains jurisdiction to review these claims pursuant to § 628(i). Moreover, the court believes that § 628(h), when read in conjunction with § 628(i), does not limit the court's ability to provide injunctive relief when such relief is taken as part of determining the validity of promotion boards' policies. *Motion Picture Ass'n of Am., Inc. v. Fed. Commc'ns Comm'n*, 309 F.3d 796, 801 (D.C. Cir. 2002) (noting that individual sections of a single statute should be construed together).

### 2. The Plaintiffs Fail to Demonstrate Standing for the Injunctive Relief Requested

The plaintiffs assert that they have standing because they "include active duty and active duty Reserve chaplains and two endorsing agencies with active duty Navy chaplains and

chaplain candidates who will be reviewed by the selection board procedures they challenge." Pls.' Mot. at 2. The defendants argue that the plaintiffs do not meet their burden in demonstrating standing because the plaintiffs cannot "show any injury-in-fact sufficient to establish their standing to seek prospective relief enjoining any future [promotion] boards." Defs.' Opp'n at 12. Specifically, the defendants contend that in requesting injunctive relief, the plaintiffs ask the court to rely on "dubious presumptions." *Id.*

To demonstrate standing, a plaintiff must have suffered (or in this case, will suffer) an injury in fact, which is defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). This Circuit has made clear that no standing exists if the plaintiff's allegations are "purely 'speculative[, which is] the ultimate label for injuries too implausible to support standing.'" *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001) (quoting *Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.*, 211 F.3d 633, 637 (D.C. Cir. 2000)). Finally, if a plaintiff is an association, it may demonstrate standing as long as "its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires members' participation in the lawsuit." *Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n*, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

As the defendants observe, the plaintiffs essentially ask the court to assume that the chaplains who will serve as promotion board members will "necessarily favor candidates affiliated with his or her own denomination," and that the future promotion boards' decision will

be controlled by the voting habits of these allegedly biased chaplain members. As the court has previously explained to the parties, when a Navy chaplain sits on a promotion board, they act "first and foremost as Naval officers," and are presumed to undertake their official duties in good faith. *See Adair*, Mem. Op. (Jan. 10, 2002) at 48-49. Absent compelling evidence to the contrary, the plaintiffs' suggestions cannot support a finding that the plaintiffs have standing. *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980) (noting that standing does not exist where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect [the] alleged injury with [the challenged conduct]"). As such, the court determines that the plaintiffs lack standing to move for the injunctive relief requested in their motion. *Trans World Airlines, Inc. v. National Mediation Bd.*, 1981 U.S. Dist. LEXIS 13618, at *27 (D.D.C. 1981) (noting that the harm suggested by the plaintiff was "too speculative and minimal to generate standing to move for injunctive relief").

### 3. Substantial Likelihood of Success on the Merits

The plaintiffs argue that the evidence they have submitted makes a clear showing that the defendants will promote personnel who belong to certain denominations over others. Pls.' Mot. at 17. According to the plaintiffs, their expert testimony suggests that the defendants are engaging in practices which "result in clear denominational preferences in the award of government benefits, advancing some denominations and inhibiting others to the detriment of Plaintiffs." *Id.* at 17. They further contend that "[t]he challenged practices are not narrowly tailored to achieve a compelling purpose," and therefore "fail all Establishment Clause tests and result in unequal treatment for all chaplains." *Id.*

The defendants respond that "[t]here is no empirical evidence that would suggest denominational favoritism or discrimination correlated to the denominational affiliation of chaplain board members." Defs.' Opp'n at 19-20. In support of this argument, the defendants put forth testimony from their own expert which "found serious flaws in [the plaintiffs' expert's] analyses." *Id.* at 20. They further argue that establishment clause liability cannot "be predicated solely on statistical evidence of disparate impact in favor of or against certain denominations." *Id*.

Because a preliminary injunction is an "extraordinary and drastic remedy," it is axiomatic that "the one seeking to invoke such stringent relief is obliged to establish a clear and compelling legal right thereto based upon undisputed facts." *Belushi v. Woodward*, 598 F. Supp. 36, 37 (D.D.C. 1984) (citing *Rosemont Enterprises, Inc. v. Random House Inc.*, 366 F.2d 303, 311 (2d Cir. 1966)). If the record presents a number of disputes regarding the inferences that must be drawn from the facts in the record, the court cannot conclude that the plaintiff has demonstrated a substantial likelihood of success on the merits. *Suburban Assocs. Inc. v. U.S. Dep't of Housing & Urban Development*, 2005 WL 3211563, at *10 (D.D.C. 2005); *Secs. & Exchange Comm'n v. Falstaff Brewing Corp.*, 1977 WL 1032, at *18 (D.D.C. 1977).

Here, the court concludes that the plaintiffs have not made the necessary showing that they have a substantial likelihood of success on the merits. First, the plaintiffs have submitted no evidence from which the court could assume that the future promotion boards will follow any putative pattern of alleged past discrimination. *See* Defs.' Opp'n at 23. Second, the plaintiffs' constitutional theory is not one that has been endorsed by this Circuit or the Supreme Court. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540-43 (1993); *Larson*

*v. Valente*, 456 U.S. 228, 246 (1982); *cf. Lemon v. Kurtzman*, 403 U.S. 602 (1971).  Accordingly, the court concludes that the plaintiffs have not made a clear showing that they are likely to succeed on the merits of their Establishment Clause claim.[4]

### 4. Irreparable Harm

With regard to the irreparable harm prong, this Circuit has "set a high standard" in order for a plaintiff to establish the existence of an irreparable injury.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The injury must be both certain and great, and must be actual and not theoretical.  *Id.*  In addition, the injury must be beyond remediation.  *Id.*  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough."  *Id.* (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (internal quotation marks omitted)).  The plaintiffs claim that absent the injunction, they will be denied benefits in the form of promotions, continuation of active duty and key assignments.  Pl.'s Mot. at 24.  These losses, however, constitute the very type of injury that the Circuit has indicated are insufficient to establish irreparable harm.  *See England*, 454 F.3d at 297.  The loss of money, time and energy from these benefits comprise the types of injuries that do not fall within the scope of relief of a preliminary injunction.

---

4   In addition, the defendants maintain that one of the plaintiffs' central arguments – that certain duties have been impermissibly delegated to religious functionaries – has already been rejected by this court.  Defs.' Opp'n at 24.  The court need not reiterate its previous analysis; suffice it to say that a religious individual need not be hermetically sealed from the decision-making process.  The presence of a religious employee on a board that evaluates another fellow officer's fitness for promotion does not, by itself, make a clear showing that a constitutional injury is imminent.  *Adair,* Mem. Op. (Jan. 10, 2002) at 47-50.

Furthermore, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* at 297-98 (quoting *FPC*, 259 F.2d at 925). The defendants here correctly point out that even if the plaintiffs suffer injury in the form of denied benefits, any such injury may be reparable through the Navy's special selection board procedures to remedy past promotion decisions that were influenced by discrimination. Def.'s Opp'n at 3. This Circuit has noted that "former officers who prevail before the special selection board are entitled to revision of their military record to correct an error or remove an injustice resulting from not being selected for promotion by the initial board." *England*, 454 F.3d at 298 (internal quotations and citations omitted). Accordingly, the plaintiffs fail to establish that the harms alleged above are irreparable.

The plaintiffs assert that the defendants' challenged practices violate the Establishment Clause by discriminating against the plaintiffs on the basis of their religious affiliation, and therefore the defendants' alleged violation is sufficient to satisfy the irreparable harm prong. Pl.'s Mot. at 36. This Circuit has indeed held that the mere allegation that the government is violating the Establishment Clause may suffice to satisfy this prong. *England*, 454 F.3d at 304. The Circuit has further noted, however, that a "preliminary injunction will not issue unless the moving party also shows, on the same facts, a substantial likelihood of success on the merits, that the injunction would substantially injure other interested parties, and that the public interest would be furthered by the injunction." *Id.* The Circuit has indicated that "unsupported or undeveloped allegations of government establishment . . . will not withstand scrutiny concerning the movant's likelihood of success on the merits, thereby defeating a request for a preliminary

injunction." *Id.* "Likewise," the Circuit has concluded, is the fate of preliminary injunction motions that "inflict untoward detriment on persons not party to the case," as it is for "motions that do not further the public interest." *Id.* Thus, while the Circuit has found that a violation of the Establishment Clause is sufficient to constitute irreparable harm, its holding does not "in any way lessen[] the burden for parties seeking preliminary injunctive relief [and instead] merely focuses greater attention on the three other factors that indisputably enter into the preliminary injunction determination." *Id.* Accordingly, the court presumes that irreparable harm is present and weighs more heavily the other factors discussed herein in deciding the plaintiffs' preliminary injunction motion.

### 4. Substantial Injury to Others

The plaintiffs argue that a preliminary injunction would not substantially injure any third parties. Pls.' Mot. at 37-38. In contrast, the defendants argue that the issuance of a preliminary injunction would affect those potential chaplains who are currently entitled to a promotion. Defs.' Opp'n at 38. The defendants further note that scores of military personnel currently rely on a fully staffed chaplaincy corps; these individuals would be harmed by a judicial order that interrupts the flow of military personnel decisions. *Id.*

Whether or not third parties would be affected by a preliminary injunction is of central importance when deciding whether to issue a preliminary injunction. *National Wildlife Federation v. Burford*, 835 F.2d 305, 315 (D.C. Cir. 1987). A preliminary injunction should only be issued if "[t]hird parties are not subject to its prohibitions." *Id.* at 316. Here, it appears that two groups of people would be directly or indirectly affected by the injunction the plaintiffs

seek. First, the injunction the plaintiffs seek would necessarily halt the promotion of those individuals who are currently scheduled to be promoted. *See* Defs.' Opp'n at 38. An injunction would prevent those individuals from receiving all the benefits (monetary or otherwise) that accompany the higher rank to which they are presumably entitled. *Id.*

Second, those military employees who rely upon a properly staffed chaplaincy corps would be indirectly affected by enjoining promotion boards. Should the chaplaincy corps be understaffed, these individuals would not be able to consistently rely on the religious services provided by military chaplains. Defs.' Opp'n at 38. The plaintiffs do not dispute this fact in their briefing. *See* Pls.' Reply at 24-25.

In sum, the defendants have shown that there is a substantial group of third parties who would be affected – both directly and indirectly – by the judicial injunction sought by the plaintiffs. Accordingly, the court's analysis of the third prong of the preliminary injunction framework militates against a finding that the plaintiffs have made "clear showing" of their entitlement to injunctive relief. *See Mazurek*, 520 U.S. at 972.

### 5.  Public Interest

The plaintiffs argue that a preliminary injunction would serve the public interest because such an order would provisionally remedy any potential constitutional violations. Pls.' Mot. at 38. The plaintiffs thus argue that the public would be served by an order requiring the military to comply with the Constitution's First Amendment guarantees. *Id.* In contrast, the defendants argue that a preliminary injunction would harm the Navy by interrupting its personnel decisions and causing its chaplaincy corps to be understaffed. Defs.' Opp'n at 38. The defendants

maintain that a halt in the flow of chaplaincy personnel decisions would cause increased gaps in the ability of chaplains to carry out their mission. *Id.* In addition, the defendants maintain that the public at large would be harmed by an unwarranted judicial intrusion into military matters. *Id.*

As the Supreme Court held in *Goldman v. Weinberger*, "[the judicial] review of military regulations [that are] challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society." 475 U.S. 503, 507 (1986). Judicial deference is therefore "at its apogee" when a court is asked to review the constitutional propriety of military affairs. *Rostker v. Goldberg*, 453 U.S. 57, 70 (1981). Similarly, case law counsels extreme caution before second-guessing decisions relating to the military's personnel decisions. *Blevins v. Orr*, 721 F.2d 1419, 1423 (D.C. Cir. 1983) ("It is beyond the expertise, as well as the authority, of the judiciary to second-guess the military with respect to overall manpower needs and promotion policies or to pass judgment on military policy concerns, such as possible congressional antipathy to officer promotion practices."). This is particularly true where, as is the case here, it is unclear that any constitutional violation is imminent. *See Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009).

The court is acutely aware of the nature and gravity of the constitutional injuries alleged. Nevertheless, the judiciary must defer to military considerations even when the challenges involve First Amendment guarantees protected by the Constitution. *Goldman*, 475 U.S. at 597-08. In addition, the public may suffer when the judiciary interferes with the efficient administration of the military. *Kosnik v. Peters*, 31 F. Supp. 2d 151, 158 (D.D.C. 1998) ("It would be damaging to shift the decision [as to the composition, training, equipping, and control

of a military force] from trained military professionals to a non-specialist judiciary."). Moreover, "interference in military personnel decisions causes great harm to the military because of the potential cumulative effect of multiple injunctions." *Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009).

The defendants maintain that a judicially ordered halt in military personnel decisions would hamper the military's ability to carry out its mission. *Id.* In addition, the defendants maintain that the public would be harmed by an unwarranted judicial intrusion into military matters inasmuch as it would open the door to further intrusions. *Id.* The plaintiffs offer no evidence with which to rebut the defendant's arguments, opting instead to claim that these matters are "specious" or unsubstantiated. *See* Pls.' Reply at 24. In doing so, the plaintiffs misconstrue their duty to satisfy the "extraordinary" burden that is borne by a party seeking a judicial remedy prior to the commission of any constitutional injury. *Mazurek*, 520 U.S. at 972. The plaintiffs argue that the public's strong interest in the efficient administration of the military only applies when the military strictly adheres to the Constitution. Pls.' Reply at 25. This puts the cart before the horse, however; the plaintiffs have not yet shown unequivocally that the military will commit any constitutional error. *See* Part III.B.3, *supra*. Until the plaintiffs have done so "by a clear showing," *Mazurek*, 520 U.S. at 972, the court must defer to the military's personnel decisions, *Goldberg*, 475 U.S. at 507. Accordingly, the court concludes that the plaintiffs have not made a clear showing that a preliminary injunction would serve the public interest.

In sum, the court concludes that the plaintiffs have not satisfied their burden of showing their entitlement to injunctive relief. The court notes that the evidence put forth by the plaintiffs at best establishes a colorable claim to relief under the Establishment Clause. Absent a clearer showing of the plaintiffs' likelihood of success on the merits, there is no justification for the court to deviate from the ordinary course of adjudication and judicial review. *See Am. Bankers Ass'n*, 38 F. Supp. 2d at 140. Although the plaintiffs' claims might demonstrate an irreparable injury if ultimately vindicated, *see England*, 454 F.3d at 304, the plaintiffs have failed to demonstrate that an injunction would not substantially injure third parties. In addition, the plaintiffs have failed to show that the public interest would be furthered by the court's intrusion into military personnel decisions. *Goldman*, 475 U.S. at 507-08; *Weinberger v. Romero-Barcelo*, 456 U.S. at 312 (noting that courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"). Accordingly, the court denies the plaintiffs' motion.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for injunctive relief. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of January, 2012.

RICARDO M. URBINA
United States District Judge