**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
                                )
IN RE: NAVY CHAPLAINCY          )     Case No. 1:07-mc-269 (GK)
                                )
_____)

## MEMORANDUM OPINION

### Table of Contents

I. Background ................................................. 2

  A. The Navy Chaplain Corps .................................... 3

  B. The Navy's Personnel System ............................... 4

  C. Plaintiffs' Claims ........................................ 5

  D. Procedural Background ..................................... 7

II. Legal Standard ........................................... 9

  A. Standard of Review under Fed. R. Civ. P. 12(b)(1) ......... 9

  B. Standing .................................................. 9

  C. Mootness ................................................. 11

III. Analysis ............................................... 12

  A. "As Applied" Challenges to Alleged Policies .............. 13

    1. Faith Group Accession Goals ........................... 13

    2. Staffing of CARE Boards ............................... 19

    3. CARE Board Procedures ................................. 20

    4. Former Alleged Recruiting Policy ...................... 21

    5. Alleged use of Faith Group Categories ................. 23

    6. Alleged Dual Systems of Discipline .................... 23

    7. SECNAVINST 1730.7C .................................... 26

    8. Alleged Policy of a General Protestant Service ........ 29

    9. Alleged Policy of Reserving Key Billets ............... 31

    10. Alleged Practices Concerning Recalls ................. 32

  B. "As Applied" Challenges to Conditions of Chaplain Corps... 34

  C. Challenges to Ad Hoc Actions ............................. 37

    1. Alleged Failure to Consider Prior Reports ............. 37

2. Alleged Interference with Ministries .................... 41

3. Alleged Interference with Prayer ....................... 43

D. Portions of Claims of Specific Plaintiffs................. 45

1. Statute of Limitations ................................ 46

2. Exhaustion of Administrative Remedies ................. 48

**IV. Conclusion** .............................................. 52

Plaintiffs are current and former Non-liturgical Protestant chaplains in the United States Navy, their endorsing agencies, and a fellowship of non-denominational Christian evangelical churches. They bring this consolidated action against the Department of the Navy and several of its officials. Plaintiffs allege that Defendants discriminated against Non-liturgical Protestant chaplains on the basis of their religion, maintained a culture of denominational favoritism in the Navy, and infringed on their free exercise and free speech rights.

This matter is before the Court on Defendants' Motion to Dismiss on Jurisdictional Grounds. Upon consideration of Defendants' Motion [Dkt. No. 217], Plaintiffs' Opposition [Dkt. No. 229], Defendants' Reply [Dkt. No. 235], and the entire record herein, and for the reasons set forth below, Defendants' Motion shall be **granted in part and denied in part**.

## I.   BACKGROUND

Only a brief recitation of the facts is necessary at this time since the Court has familiarity with the extensive record in

the case, which includes more than twenty written decisions by Judge Ricardo Urbina when the case was assigned to him, by this Court, and by the Court of Appeals.

## A.   The Navy Chaplain Corps

The Navy employs a corps of chaplains ("Chaplain Corps" or "CHC") whose mission is to provide for the free exercise of religion by members of the Navy, their dependents, and other authorized persons. In re England, 375 F.3d 1169, 1171 (D.C. Cir. 2004) (citation omitted). In accordance with this mission, Navy chaplains provide religious education, counseling, and support to sailors and Marines and advise commanders on religious, moral, and ethical issues. Id.

There are over 100 faith groups recognized by the Department of Defense, which the Navy has grouped into four "faith group categories" ("FGCs") consisting of: Roman Catholic, Liturgical Protestant, Non-liturgical Protestant, and Special Worship. In re Navy Chaplaincy, 697 F.3d 1171, 1173 (D.C. Cir. 2012). The Liturgical Protestant category consists of Protestant denominations that trace their origins to the Protestant Reformation, practice infant baptism, and follow a prescribed liturgy; it includes Lutheran, Episcopal, Methodist, and Presbyterian faiths. In re England, 375 F.3d at 1172; Consolidated Complaint ("Consol. Compl.") ¶ 6(b) [Dkt. No. 134]. The Non-liturgical Protestant category is composed of Protestant

denominations that baptize at the "age of reason" and do not follow a formal liturgy; it includes Baptist, Evangelical, Pentecostal, Bible Church, and Charismatic faiths. In re England, 375 F.3d at 1172; Consol. Compl. ¶ 6(c). The Special Worship group includes denominations not covered by the Protestant and Roman Catholic categories; it includes Jewish, Hindu, Buddhist, Muslim, Jehovah's Witness, Christian Science, Mormon, and Unitarian faiths. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 295 n.3 (D.C. Cir. 2006); Consol. Compl. ¶ 6 n.5.

**B.   The Navy's Personnel System**

Chaplains enter the Navy through a civilian clergy program or a theological student program. Consol. Compl. ¶ 44(c). The term "accession" refers to the process of bringing a qualified individual into the Chaplain Corps as a commissioned officer. Thereafter, they are subject to the same personnel system as other naval officers and must be selected for promotion in rank when the needs of the service require. In re England, 375 F.3d at 1172 (citing 10 U.S.C. § 611(a)). If an officer is considered but not selected for a promotion, he or she is said to have "failed of selection" ("FOS"). Chaplaincy of Full Gospel Churches, 454 F.3d at 293. After failing of selection on two or more occasions, an officer is subject to involuntary separation, known as "selective early retirement." See 10 U.S.C. § 632(a)-(b). However, the Navy may elect to continue an officer on active duty despite two or

more failures of selection as its needs require. See 10 U.S.C. §
632(c)(2).

Each of these decisions regarding a naval officer's career -
promotion, selective early retirement, and continuation on active
duty - is made by a "selection board" composed of superior officers
who act pursuant to statute and regulations prescribed by the
Secretary of Defense. See 10 U.S.C. §§ 611, 612.

    C.   **Plaintiffs' Claims**

Plaintiffs' Consolidated Complaint contains 18 Counts, many
of which contain various claims challenging current and historical
aspects of the CHC's personnel system. The following is a small
sampling of their claims.

First, they contend that the faith group categories
recognized by the Navy are discriminatory and arbitrary. Consol.
Compl. ¶¶ 33-38. In particular, they claim that the categories
reflect neither religious demographics nor legitimate similarities
or differences among the worship traditions represented.

Second, they allege that in the past (but not since at least
2002), the CHC used religious quotas to apportion chaplain
opportunities among various faith groups. Consol. Compl. ¶¶ 33-
35. In particular, they allege that policies existed requiring one
or two Roman Catholic chaplains on selection boards, and that such
policies were designed to "stack" selection board proceedings
against Non-liturgical candidates and in favor of Roman Catholic

and Liturgical Protestant chaplains despite their allegedly declining numbers in the broader population. Consol. Compl. ¶¶ 57(e)-(g). Defendants deny that such policies ever existed.

Third, Plaintiffs challenge a number of facially neutral personnel practices - both current and historical - that they believe have allowed religious bias to infect selection board outcomes. Plaintiffs claim that the practices, taken together, "enable[] each board's chaplains to ensure that a particular candidate will not be promoted, thus increasing the odds for their preferred (and discriminatory) results." In re Navy Chaplaincy, 738 F.3d 425, 428 (D.C. Cir. 2013).

Plaintiffs also challenge a practice, which they concede has not existed since 2002, in which "each selection candidate's three-digit 'faith group identifier' code was prominently displayed throughout the selection board process." Consol. Compl. ¶ 86. Plaintiffs contend this practice had no purpose other than "to identify a candidate's faith group to the board" for purposes of permitting the board members "to exercise their individual or faith group prejudice for or against other chaplains or faith groups, particularly against Non-liturgical chaplains." Id. ¶ 87.

Fourth and finally, Plaintiffs seek relief relating to a variety of specific instances in which they allegedly suffered discrimination and free exercise harm while serving in the Chaplain Corps. See e.g., Addendum 1 to Consol. Compl. ¶¶ 12, 37, 41. These

include occasions in which Plaintiffs claim to have been: (1) retaliated against, criticized, and removed from their posts based on the content of their religious teachings; (2) treated differently from Liturgical chaplains with respect to disciplinary issues and employment benefits; (3) required to officiate at Liturgical services; and/or (4) subjected to general policies that, while not facially discriminatory, disfavored certain aspects of their worship traditions. See generally id. ¶¶ 1-65.

### D.   Procedural Background

This consolidated case is composed of three cases filed by the same counsel: Chaplaincy of Full Gospel Churches v. England, Civ. No. 99-2945 ("CFGC"); Adair v. England, Civ. No. 00-566 ("Adair"); and Gibson v. Dep't of Navy, Civ. No. 06-1696 ("Gibson").

CFGC and Adair were filed in this Court on November 5, 1999, and March 17, 2000, respectively, and were consolidated for pretrial purposes on September 26, 2000 [Adair Dkt. No. 21]. On April 28, 2006, Plaintiffs' counsel filed Gibson as a separate putative class action in the Northern District of Florida, and that case was subsequently transferred to this District pursuant to 28 U.S.C. § 1404. See Mem. Order, dated August 17, 2006, at 1 [Gibson Dkt. No. 1]. On June 18, 2007, the Court consolidated all three actions, concluding that they raised "substantially similar

constitutional challenges to the Navy Chaplaincy program." Mem. Order, dated June 18, 2007, at 4 [Dkt. No. 11].

Between 2002 and 2009, the parties conducted discovery, interspersed with collateral litigation and three interlocutory appeals to the D.C. Circuit. At this Court's request, on October 3, 2012, Plaintiffs filed a Consolidated Complaint [Dkt. No. 134] comprised of all the claims at issue in the consolidated case.

On September 4, 2014, this Court denied Plaintiffs' Motion for Class Certification [Dkt. No. 192], and on September 26, 2014, granted Defendants' Motion for Partial Summary Judgment on their statute of limitations defense [Dkt. No. 194]. At the Court's request, the parties filed a Joint Status Report on October 24, 2014, listing the remaining claims as well as those Plaintiffs whose claims should be dismissed in their entirety [Dkt. No. 199]. On November 19, 2014, Plaintiffs filed a Rule 54(b) Motion for Modification or Clarification of the Court's Partial Summary Judgment opinion [Dkt. No. 203]. The Court denied Plaintiffs' Rule 54(b) Motion on February 9, 2016 [Dkt. No. 237].

On February 27, 2015, Defendants filed the present Motion to Dismiss on Jurisdictional Grounds ("Motion") [Dkt. No. 217]. Plaintiffs filed their Opposition on August 3, 2015 ("Opp'n") [Dkt. No. 229], and Defendants filed their Reply on October 9, 2015 ("Reply").

## II.    LEGAL STANDARD

### A.    Standard of Review under Fed. R. Civ. P. 12(b)(1)

As courts of limited jurisdiction, federal courts possess only those powers specifically granted to them by Congress or directly by the U.S. Constitution. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction to hear the case. See Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008). In deciding whether to grant a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must "accept all of the factual allegations in [the] complaint as true[.]" Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (internal quotation marks omitted) (citing United States v. Gaubert, 499 U.S. 315, 327 (1991)). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." See Herbert v. Nat'l Acad. Of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.    Standing

Article III of the Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies." See U.S. Const. art. 3, § 2. "[N]o principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, (2006)). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Id. (internal quotation marks and citation omitted).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and footnote omitted).

Plaintiffs seeking prospective injunctive or declaratory relief as to future acts must demonstrate that harm resulting from such acts is "'actual or imminent, not conjectural or hypothetical . . . . Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" City

of Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). Past wrongs have a bearing on whether there is a real and immediate threat of future injury. Id.

## C.   Mootness

"Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). The doctrine of mootness is premised upon the notion that "[a] federal court is constitutionally forbidden to render advisory opinions or 'to decide questions that cannot affect the rights of litigants in the case before them.' " Better Gov't Assoc. v. Dep't of State, 780 F.2d 86, 90-91 (D.C. Cir. 1986) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

A defendant's voluntary cessation of a challenged practice moots a case only if the defendant shows that "(1) there is no reasonable expectation that the alleged violation will recur and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Reeve Aleutian Airways, Inc. v. United States, 889 F.2d 1139, 1142-43 (D.C. Cir. 1989)) (quoting County of Los Angeles, 440 U.S. at 631). This burden "is a heavy one." Reeve Aleutian Airways, 889 F.2d at 1143.

## III. ANALYSIS

Defendants address their challenges to Plaintiffs' remaining claims in three categories, each of which mirror the categories in the Parties' Joint Status Report Identifying Remaining Claims filed with the Court on October 14, 2014 [Dkt. No. 199]. The categories are: (1) Plaintiffs' "as applied" challenges to alleged Chaplain Corps personnel policies or practices; (2) Plaintiffs' "as applied" challenges to alleged conditions of hostility and bias in the Chaplain Corps; and (3) Plaintiffs' challenges to alleged ad hoc actions against certain Plaintiffs. Mot. at 3. The Court will address each category in turn.

As an initial matter, Plaintiff Chaplaincy of Full Gospel Churches ("CFGC") did not respond to Defendants' Motion and has therefore conceded these arguments. See F.D.I.C. v. Bender, 127 F.3d 58, 67 (D.C. Cir. 1997). CFGC's counsel, who is also counsel for AGC and the individual Plaintiffs, moved to withdraw his appearance as counsel for CFGC on March 19, 2015 [Dkt. No. 220], and this Court granted the motion the following day. See Order Granting Motion to Withdraw [Dkt. No. 221]. No other counsel has been entered on behalf of CFGC. Therefore, Defendants' Motion to Dismiss is granted with regard to CFGC's claims.

### A.    "As Applied" Challenges to Alleged Personnel Policies or Practices

Plaintiffs challenge several of the Navy's alleged policies or practices relating to accession, personnel management, promotions, and career transition. The Navy has not, at this time, moved to dismiss policies relating to aspects of the promotion and early retirement selection board process, but seeks dismissal of other claims for lack of standing and mootness, as well as for being time-barred. Mot. at 7-8.

### 1.    Faith Group Accession Goals

As mentioned previously, accession refers to the process by which an individual becomes a member of the Chaplain Corps. "The accession process includes recruitment, processing[,] and swearing-in to the military service." Opp'n at 34. Plaintiffs allege that from 1986 until 2001 or 2002, the Navy maintained a so-called "Thirds Policy"[1] under which it reserved thirty-five percent of chaplain accessions for Liturgical Protestants, thirty-five percent for "Non-liturgical faith groups," and thirty percent for "Others," which included Catholics. Mot. at 35-36; Consol. Compl. ¶¶ 33, 35.

---

[1] The Court dismissed Plaintiffs' claim regarding the Thirds Policy for lack of subject matter jurisdiction in 2014. See In re Navy Chaplaincy, No. 7-269, 2014 WL 4378781, at *6-9 (D.D.C. Sept. 4, 2014).

While Defendants dispute that such a policy ever existed, they argue that since 2001, "the Navy has accessed chaplain candidates on a best-qualified basis, without any consideration of religious affiliation." Mot. at 8. Plaintiffs deny that the Navy's current practice is faith neutral. Opp'n at 37. Plaintiffs contend that the Navy's accession policy is unconstitutional because any faith group or denominational goals are not based on the Navy's "free exercise needs" (the denominational make-up of the Navy's service members), resulting in arbitrary "denominational preferences." Consol. Compl. ¶¶ 68-70. Therefore, according to Plaintiffs, "[t]he accession system is not narrowly tailored to achieve the CHC's constitutional purpose and is nothing more than a federal jobs program for clergy." Id. ¶ 70.

First, Defendants argue that every individual Plaintiff has successfully accessed into the CHC, and therefore not a single Plaintiff has suffered an injury due to the alleged accession policy. Without an injury, there cannot be standing to challenge the alleged policy. Mot. at 9. Plaintiffs do not deny that the individual Plaintiffs were not harmed directly by the policy. See Opp'n at 41. Rather, Plaintiffs argue that "the CHC's denominational preference produces twin messages of preference and prejudice" and argue that the policies are "part of the culture of prejudice." Id.

This argument does not suffice to show injury or standing. Plaintiffs do not show how the alleged messages of preference and prejudice cause injury that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560-61. Plaintiffs' allegation of a culture of prejudice and bias is a separate claim and will be analyzed later in this Opinion. See infra, Section III.B.

Second, Defendants argue that the organizational Plaintiffs CFGC and Association of Gospel Churches ("AGC") fail to demonstrate standing, either on their own behalf or in a representative capacity. See Mot. at 11-15. An organization may have standing to bring a cause of action on either its own behalf (sometimes referred to as "organizational standing") or on behalf of its members ("associational standing"). Warth v. Seldin, 422 U.S. 490, 511 (1975); People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 797 F.3d 1087, 1099 (D.C. Cir. 2015).

For an organization to have standing on its own behalf, it must meet the standard requirements of injury-in-fact, causation, and redressability. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). In other words, the Court must ask whether the organization itself has "alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction." Id. (internal quotation marks and citations omitted). "A conflict between the defendant's conduct

and the organization's objectives is not enough to establish standing; the organization must allege that discrete and programmatic concerns are directly [a]ffected by the defendant's conduct." CFGC, No. 99-2945, Memorandum Opinion at 8 [Dkt. No. 30] (citing Nat'l Treasury Emp. Union v. United States, 101 F.3d 1423 (D.C. Cir. 1996). The asserted injury must be "concrete and demonstrable," rather than "simply a setback to the organization's abstract social interests." Havens Realty Corp., 455 U.S. at 379.

AGC asserts that it has standing because CHC's "policies and practices which reject AGC candidates (and also impact [] AGC promotions . . .) impair and in fact preclude AGC's ability to represent its member churches to the military, causing injury to AGC." Opp'n at 39. "AGC's mission is to represent its member churches to the military by seeking and endorsing qualified candidates to the chaplaincy and supporting them in their continued representation once they are on active duty or in the reserves." Opp'n at 38-39.

In 2000, Judge June Green ruled in CFGC (which was later consolidated with Adair and Gibson to form the present case) that CFGC did not have standing on its own behalf. CFGC Mem. Op at 10. CFGC had characterized its primary function as the sponsorship of clergy. Id. CFGC also claimed that it had to "divert sizable resources to minimize the effects of the Defendants' alleged discrimination, becoming a counselor and employment agency for

CFGC Navy chaplains." Id. at 9. The Court found that providing such assistance to the chaplains was tangential to CFGC's primary function and that Defendants' alleged discriminatory activity was "not at 'loggerheads' with the group's mission." Id. at 10. Therefore, the Court concluded that CFGC had not suffered injury in fact. Id.

Plaintiffs have not shown how AGC is different from CFGC, nor have they explained why this Court's prior holding is not also applicable to AGC. AGC's only attempt to distinguish itself from CFGC is its claim that CFGC did not name specific candidates who were rejected, while AGC has. Opp'n at 40. This distinction does not touch on the core dispute: whether AGC's "discrete and programmatic concerns are directly [a]ffected by" CHC's alleged discrimination. CFGC Mem. Op. at 8. Consequently, AGC's identification of specific members who were rejected is more appropriately considered in the associational standing analysis. For these reasons, the Court finds that AGC does not have standing to sue on its own behalf.

An organization has associational standing when: "(1) 'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose;' and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Ctr. for Sustainable Econ. v. Jewell,

779 F.3d 588, 596 (D.C. Cir. 2015) (quoting Hunt v. Wash. State
Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)). Defendants argue
that CFGC and AGC fail to satisfy the first and third prongs.

Defendants contend that AGC has failed to identify "at least
one specifically-identified member" who has suffered an injury-
in-fact. Mot. at 14 (quoting American Chemistry Council v. Dep't
of Transportation, 468 F.3d 810, 820-21 (D.C. Cir. 2007)). In
response, Plaintiffs submit the Declaration of Captain Steven D.
Brown, the current President of AGC ("Brown Decl."), Dkt. No. 227-
16, who identifies several individuals that AGC endorsed but were
rejected by CHC. See e.g., Brown Decl. ¶ 11 (discussing the
unsuccessful applications of Isaac Toliver and James Block).

Although Plaintiffs have identified certain individuals who
were unsuccessful in their applications to join the Chaplain Corps,
at no point does the Brown Declaration or the Opposition allege
that the individuals were unsuccessful as a result of the alleged
faith group accession policies that are at issue. Therefore, while
Plaintiffs have shown that the individuals they identify may have
suffered an injury, they have not alleged causation sufficient for
the Court to find that the individuals would have standing in their
own right. AGC fails to satisfy the first prong of associational
standing.[2]

---

[2] Because the Court finds that AGC lacks associational standing
due to the first prong of the test -- "its members would otherwise

For the aforementioned reasons, the Court holds that neither the individual Plaintiffs nor the organizational Plaintiffs have standing to challenge the Navy's faith group accession goals.

### 2.   Staffing of CARE Boards

Count 2 of the Consolidated Complaint alleges that the Navy had "an unconstitutional religious hierarchy and preference system" which it implemented through denominational and FGC goals. Consol. Compl. ¶¶ 40-63. One sub-allegation of Count 2 is that the Navy used "a set of favored denominations for its [Chaplain Appointment Recall and Eligibility ("CARE")] Board memberships who tended to approve those most like themselves and reject or limit those not like themselves." Id. ¶ 44(g).

Insofar as the ¶ 44(g) claim is limited to the period of the alleged Thirds Policy, Defendants argue this claim is moot and should also be dismissed for lack of standing. Mot. at 16. Should the scope of the claim be construed to apply post-2001, Defendants also argue that it should be dismissed for lack of standing, as neither the individual Plaintiffs nor the organizations have

---

have standing to sue in their own right" -- it need not reach the third prong -- "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." The Court does note, however, that Plaintiffs' only response to Defendants' challenge relative to the third prong was to summarily state that "'[n]either the claim asserted nor the relief requested requires the participation' of either AGC candidates or chaplains in this lawsuit." Opp'n at 41. By failing to address the substance of Defendants' contentions, Plaintiffs have conceded Defendants' argument that AGC fails to satisfy the third prong.

standing. Id. Plaintiffs fail to reply to either of Defendants'
mootness or standing arguments, and have therefore conceded them.
Accordingly, the claim associated with ¶ 44(g) is dismissed.

### 3. CARE Board Procedures

Counts 3 and 4 of the Consolidated Complaint challenge, inter
alia, the procedures employed by the CARE Boards. Consol. Compl.
¶¶ 71, 81-84. These procedures allegedly "grant unlimited
discretionary power to chaplains with no accountability and no
effective guarantees [that] the power will be used for neutral,
secular and non-ideological purposes." Id. ¶ 82. To the extent
this claim is applicable to the time period of the alleged Thirds
Policy, Defendants argue that the claim fails for mootness and
lack of standing, and to the extent it applies post-2001,
Defendants argue it fails for lack of standing. Mot. at 17.
Defendants' lack of standing argument mirrors its prior arguments
in Sections A.1 and A.2, namely that individual plaintiffs lack
any injury and organizational plaintiffs lack direct or
representational standing. Id.

Plaintiffs fail to respond to Defendants' arguments and the
Court finds that they have been conceded. Therefore, the Court
dismisses Plaintiffs' claim regarding CARE Board policies found in
Counts 3 and 4.

4.   **Former Alleged Recruiting Policy**

Count 15 of the Consolidated Complaint challenges an alleged recruiting policy under which chaplains were required to speak positively about the Chaplain Corps. See Consol. Compl. ¶¶ 207-17. Plaintiffs allege that the policy was implemented via two directives issued in 2001. Id. ¶ 212. Plaintiffs refer to the policy as a "former policy" and discuss it in the past tense, although Plaintiffs do not state when the policy ceased to be in effect. Id. ¶¶ 207-217. Plaintiffs allege that the purpose of the policy was to "maintain the current irrational and disproportionate chaplain imbalance which plaintiffs allege constitutes an endorsement of religion forbidden by the Establishment Clause," and in addition, that it censored Plaintiffs' speech. Id. ¶¶ 213(b), 216.

Defendants argue that Plaintiffs have failed to identify a single plaintiff who has ever been affected or injured by the alleged policy, or how this Court could redress such an injury, and that as a result, Plaintiffs lack standing. Mot. at 18-19. In response, Plaintiffs fail to identify any specific Plaintiffs who were harmed by the alleged policy. Instead, Plaintiffs argue, without citation, that "[i]t is Black Letter Law a plaintiff need not wait until he is injured to challenge a policy unconstitutional on its face." Opp'n at 42. This is directly contrary to Supreme Court precedent stating that "the irreducible constitutional

minimum of standing contains three elements," where the first element is an "injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560-61 (internal quotation marks, citations, and footnote omitted).

Plaintiffs also posit that if any "CHC policy violates the Establishment Clause and a plaintiff is subject to that policy, their Establishment Clause rights have been violated," Opp'n at 42, apparently suggesting that injury is automatic if a plaintiff is subject to an allegedly unconstitutional policy. Plaintiffs rely on Chaplaincy of Full Gospel Churches v. England ("CFGC") in support of this theory. 454 F.3d 290, 304 (D.C. Cir. 2006). In that case though, our Court of Appeals was discussing irreparable injury for purposes of preliminary injunction analysis, not standing. Indeed, the Court of Appeals commented in a footnote that the "conclusion presupposes . . . that the party has standing to allege such a violation." Id. at 304 n.8.

Plaintiffs have failed to identify any plaintiffs who were injured by this alleged policy and to identify any injuries that were suffered. In addition, Plaintiffs have failed to respond to Defendants' redressability argument. Accordingly, Plaintiffs do not have standing to challenge the alleged recruiting policy requiring chaplains to speak positively of the Chaplain Corps and their claim is dismissed for lack of jurisdiction.

- 22 -

### 5.   Alleged Use of Faith Group Categories in Personnel Management and Staffing Decisions

In Count 1 of the Consolidated Complaint, Plaintiffs challenge the Navy's categorization of Faith Group Categories. Plaintiffs allege that the parameters of the FGCs, in which the Roman Catholic FGC has only one denomination while the "Non-Liturgical Protestant" FGC contains a wide spectrum of denominations, are arbitrary and capricious. Consol. Compl. ¶ 36. The classification allegedly facilitates religious favoritism toward some groups and "hides the CHC's bias against the Non-liturgical faith groups (and other conservative liturgical faith groups) in accessions, promotions, career opportunities, assignments, and retentions." Id. ¶ 37.

Defendants argue that Plaintiffs have not shown that they have standing to challenge the FGCs because they have demonstrated neither injury nor redressability. Mot. at 20. Plaintiffs respond that the Court has jurisdiction over the challenge, but fail to explain why, omitting any discussion of standing, injury, or redressability. Plaintiffs have again conceded this argument and the Court finds that they lack standing to challenge the categorization and use of FGCs.

### 6.   Alleged Dual Systems of Discipline and Administration

Count 7 of the Consolidated Complaint alleges that the Navy has created an unconstitutional culture of hostility toward Non-

liturgical chaplains. Consol. Compl. ¶¶ 141-152. In furtherance of that culture, Plaintiffs allege that the Navy has established two systems of discipline: one for Liturgical traditions and a second, harsher system for Non-liturgical traditions. Id. ¶ 148. In the Consolidated Complaint, Plaintiffs provide three examples of individual Plaintiffs who were harmed by the alleged dual systems of discipline. Id. ¶ 148(a)-(c) (discussing claims of plaintiffs Thompson, Tostenson, and Klappert).

Defendants argue that the claims of the three Plaintiffs who have alleged harm under the dual-disciplinary systems are time-barred, and that Plaintiffs also lack standing. This Court has previously held that the six-year statute of limitations of 28 U.S.C. § 2401(a) is applicable in this case and has asked the parties to submit a list of individuals whose claims, as a result, are time-barred. See In re Navy Chaplaincy, F. Supp. 3d 249 (D.D.C. 2014) (Memorandum Opinion granting Defendants' Motion for Partial Summary Judgment).

On October 24, 2014, the Parties submitted a list of individual Plaintiffs whose claims should be dismissed. See Dkt. No. 199. Plaintiffs Thompson and Tostenson, who were part of the Gibson case filed in 2006, were on that list, and Plaintiffs have offered no argument that their claims are not time-barred. While Plaintiff Klappert was not included on that list, all activities relating to him that are alleged in the Consolidated Complaint

appear to have occurred before April 28, 2000, the statute of limitations cut-off for the Gibson plaintiffs. Defendants argue that Klappert's dual-disciplinary-systems claim is therefore time-barred, and Plaintiffs do not dispute it.

In their Opposition, Plaintiffs mention four other individual Plaintiffs who allegedly suffered harm under the dual-disciplinary system. Opp'n at 43-44. However, nothing in the Consolidated Complaint suggests that these Plaintiffs ever encountered the Navy's disciplinary system nor do Plaintiffs specify any injury-in-fact suffered by these individuals. Id. at 44. The only harm discussed is that Liturgical and Catholic chaplains, who had been disciplined in the past for reasons unrelated to Plaintiffs, retaliated against Plaintiffs due to their religion. Id. Such harm flows from retaliation, not the Navy's disciplinary system.

In sum, there are no remaining Plaintiffs who claim to have been injured under the alleged dual-disciplinary systems. The claims of the three individual Plaintiffs mentioned in the Consolidated Complaint are time-barred, and the remaining Plaintiffs have failed to allege any injury for purposes of standing. In addition, Defendants argue that Plaintiffs have not satisfied the causation and redressability prongs of standing, and Plaintiffs failed to respond to this argument in their Opposition, thereby conceding it. See Mot. at 23-24; Opp'n at 43-44.

Plaintiffs' claims regarding an unconstitutional dual-disciplinary system are dismissed.

### 7.   SECNAVINST 1730.7C

Count 9 of the Consolidated Complaint alleges that Secretary of the Navy Instruction 1730.7C ("SECNAVINST 1730.7C"), which was issued on February 21, 2006, "unconstitutionally established a Navy religion by defining acceptable and unacceptable religious words and concepts for chaplains to speak at ceremonies or other public events." Consol. Compl. ¶ 167. SECNAVINST 1730.7C was rescinded and replaced by SECNAVINST 1730.7B in August 2006, and SECNAVINST 1730.7B has since been superseded by SECNAVINST 1730.7D. See Mot. at 25.

Defendants argue that no remaining Plaintiffs claim to have been injured by SECNAVINST 1730.7C, and therefore none have standing to challenge it. Id. In addition, Defendants argue that any claims for prospective relief are moot, as the policy has not been in effect for almost ten years. Id.

In response to the Navy's argument, Plaintiffs state that numerous individual Plaintiffs, including chaplains De Marco, Rush, Stewart, Thyrion, and Wilder, have reported "being penalized by the CHC's underlying hostility to Plaintiffs' religious speech which 1730.7C formalized as an official policy." Opp'n at 45. Because the Parties have already agreed that Thyrion's claims are time-barred, the Court need not consider them here. See Joint

- 26 -

Status Report Identifying Remaining Claims and Individual Plaintiffs Whose Claims Should Be Dismissed at 5 [Dkt. No. 199].

Plaintiffs' opposition suffers from a logical flaw: Even if SECNAVINST 1730.7C supported this hostility toward Plaintiffs' religious speech, it does not logically follow that therefore all harm suffered as a result of hostility toward religious speech was also a result of SECNAVINST 1730.7C. Contentions that the Navy interfered with the above named chaplains' religious speech are not sufficient to show injury as a result of SECNAVINST 1730.7C. Plaintiffs have not stated that any of the chaplains were harmed by SECNAVINST 1730.7C, and indeed the facts suggest that most of them had already separated from the Navy at the time of SECNAVINST 1730.7C's implementation. See e.g., Consol. Compl., Addendum 1 ¶ 49 (Rush joined Air Force Reserve in 1996); Id. ¶ 61 (Wilder non-selected in 1999 and 2000 and was forced to retire due to failure of selections); Id. ¶ 10 (suggesting De Marco retired in or around 1998).

AGC also challenges, "on behalf of its chaplains, the Navy's failure to provide effective guarantees the policy will not be reinstituted." Opp'n at 45. AGC fails to show that it has standing in its own right or that its members have standing so as to provide a foundation for representational standing.

Plaintiffs also state that the Navy has failed to meet the criteria for the voluntary cessation doctrine, but do not explain

how or why. Voluntary cessation of a challenged practice moots a case only if (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>Larsen v. U.S. Navy</u>, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting <u>Los Angeles County v. Davis</u>, 440 U.S. 625, 631 (1979)).

Plaintiffs do not allege that the Navy is even likely to consider reinstatement of SECNAVINST 1730.7C. "[T]he mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged [policy] <u>likely</u> will be reenacted." <u>Id.</u> (emphasis added) (quoting <u>Nat'l Black Police Ass'n v. District of Columbia</u>, 108 F.3d 346, 349 (D.C. Cir. 1997)). Plaintiffs have offered no such evidence.

With regard to the second prong of the test, Plaintiffs have alleged no ongoing effects of SECNAVINST 1730.7C. AGC challenges the Navy's failure to provide a guarantee that the policy will not be reinstated, but an injunction or order by this Court declaring SECNAVINST 1730.7C illegal "would accomplish nothing--amounting to exactly the type of advisory opinion Article III prohibits." <u>Id.</u> <u>Larsen</u> prohibits such an advisory declaration.

For the foregoing reasons, the Court concludes that Plaintiffs lack standing to challenge SECNAVINST 1730.7C and also finds the Plaintiffs' SECNAVINST 1730.7C claims to be moot.

### 8. Alleged Policy Requiring a "General Protestant Service"

Count 10 of the Consolidated Complaint alleges that "the Navy has historically tried to establish[] a de facto liturgical or 'high church' 'General Protestant' religion," in violation of the First Amendment of the United States Constitution. Consol. Compl. ¶ 173. Plaintiffs allege that the Navy had a policy mandating liturgical "General Protestant" services, to the detriment of Non-liturgical personnel. Id.

Defendants argue that this claim fails for lack of standing. Mot. at 26-30. In addition, Defendants also argue that the factual allegations fail to suggest that a policy existed, and instead reflect situation-specific decisions by Navy command. Id. 26-27. Plaintiffs do not contend that the Navy promulgated an official policy. Instead, they allege that the facts, taken together, are indicative of a de facto policy. Consol. Compl. ¶ 173. Whether such an unofficial policy exists is an issue of fact. In a motion to dismiss, the Court must "accept all of the factual allegations in [the] complaint as true[.]" Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005)

(internal quotation marks omitted) (citing <u>United States v.</u>
<u>Gaubert</u>, 499 U.S. 315, 327 (1991)).

Defendants state that no Plaintiff alleges any actual injury
attributable to the alleged policy, and therefore Plaintiffs lack
standing. <u>Id.</u> at 27. Plaintiffs state that the injury occurs when
a chaplain is forced to conduct a service contrary to his theology,
in violation of the First Amendment. Opp'n at 45. Plaintiffs also
provide examples of two chaplains who suffered adverse career
consequences, one as a result of his refusal to perform a
Liturgical service and the other as a result of "his emphasis on
Christ." <u>Id.</u> at 45-46. Defendants do not deny the injuries as such,
but focus on their contention that no policy existed. The Court
finds that Plaintiffs have sufficiently establishing an injury for
purposes of standing.[3]

Defendants also argue that Plaintiffs have not shown
redressability for this claim. Specifically, Defendants state that
Plaintiffs allege "no adverse action that might conceivably be
redressed through an award of remedial relief, and there is no
basis for prospective relief on these allegations given their
command-specific nature." Mot. at 29-30. The latter half of

---

[3] Defendants state that the specific incidents underlying the
claims of three of the Plaintiffs - Belt, Wilder, and Bailey -
occurred outside of the applicable limitations period. Mot. at 29.
Plaintiffs do not refute it and have therefore conceded this
argument. Accordingly, the Count 10 claims of Plaintiffs Belt,
Wilder, and Bailey are dismissed.

Defendants' argument relies on a finding that the alleged actions are command-specific, rather than indicative of Navy policy, which is a factual finding ill-suited for a motion to dismiss.

Despite the weakness of Defendants' argument, Plaintiffs provide the Court with no guidance as to what relief, either prospective or remedial, could address their claim. The entirety of Plaintiffs' redressability response is that the "Court can provide a remedy to those injured by their Liturgical superiors or the CHC's indifference." Opp'n at 46. Such an assertion lacks specificity and is too general to establish redressability. For the foregoing reasons, the Court finds that, although Plaintiffs have shown an injury-in-fact, they have not shown redressability and therefore do not have standing to challenge the alleged policy requiring a Protestant service.

### 9.    Alleged Policy of Reserving Key Billets for other Faith Group Categories

Count 2 of the Consolidated Complaint contains several sub-claims, including the claim that the Navy had a policy and practice of reserving "key" billets - defined by Plaintiffs as the 15 key decision-making positions - for Protestant and Catholic chaplains. Consol. Compl. ¶¶ 54-63; see also Capt. Larry Ellis Memorandum to Chief of Chaplains, January 25, 1995 ("Ellis Report") [Dkt. No. 135-14].

Defendants argue that Plaintiffs have provided no evidence supporting the existence of a policy. Mot. at 30. Defendants also argue that this claim fails for lack of standing, as Plaintiffs have shown neither injury-in-fact nor redressability. Id. Plaintiffs have not identified any chaplains who were eligible for the key billets but were denied the positions, nor have they explained how the Court could provide prospective or remedial relief. Id. at 33-34.

Plaintiffs failed to respond to Defendants' standing arguments, and have therefore conceded them. Accordingly, Plaintiffs' claim challenging an alleged Navy policy reserving key billets for certain faith groups is dismissed for lack of standing.

### 10. Alleged Practices Concerning the Recall of Certain Chaplains

Count 5 challenges the Navy's alleged policy giving preference to Catholics and Liturgical chaplains when selecting Navy Reserve chaplains for recall. Consol. Compl. ¶¶ 123-31; see also id. ¶¶ 46, 101 (similar claims interspersed in Counts 2 and 4). Defendants deny that such a policy or pattern ever existed, noting that Plaintiffs identify only four such recalls. Mot. at 35. Defendants also contend that Plaintiffs have not shown injury as a result of the recalls or the recall policy, nor have they shown redressability.

Defendants state that none of the remaining forty-one Plaintiffs have alleged that he or she has suffered harm from the recall of a Roman Catholic or Liturgical chaplain from Reserve duty. Id. at 36. To the extent that Plaintiffs might allege that the harm results from a message of preference, Defendants argue that our Court of Appeals' decision in 2008 has foreclosed such an argument. Id. at 37 (citing In re Navy Chaplaincy, 534 F.3d 756 (D.C. Cir. 2008)). In that case, the Court held that such a message, unaccompanied by actual employment discrimination, was insufficient to satisfy the injury-in-fact element of standing. In re Navy Chaplaincy, 534 F.3d at 760, 762-65.

Plaintiffs respond that Defendants' act of "admitting there was some impact . . . admits there was an injury." Opp'n at 47. Plaintiffs provide no citation for the proposition that impact is akin to injury. The test for standing requires an injury, not merely an impact. See Lujan, 504 U.S. at 560-61. Plaintiffs argue that there is no de minimis exception to the Establishment Clause, see id. at 46, but Defendants are not arguing that the injury is de minimis - they are arguing that there is no injury at all.

Plaintiffs point to Commander Lyle, a Catholic, as an example of an illegal recall, stating that his recall has affected numerous promotion opportunities since 2001 and has been "a barrier to being able to compete for the legally available authorizations." Id. at 47. Even so, Plaintiffs fail to identify a single plaintiff

whose promotion or recall opportunities were affected by Commander Lyle's recall. Plaintiffs point to recalled Captains Vieira (a Liturgical Protestant) and Rock (a Catholic) as "notorious career destroyers," but do not allege harm stemming from their recall, let alone which Plaintiffs were harmed. Id. That Vieira and Rock allegedly used their command positions to harm Plaintiffs does not mean that the very act of recalling Vieira and Rock caused injury.

In addition to their injury argument, Defendants argue that Plaintiffs have failed to show how this Court could redress any injury they might have suffered. Plaintiffs' only response is that this Court "can devise a remedy to make Plaintiffs affected by Recalls whole." Opp'n at 47. As previously discussed, such cursory statements are not sufficient to establish redressability. Accordingly, the Court finds that Plaintiffs have not satisfied the injury-in-fact or redressability prongs of standing.

**B. "As Applied" Challenges to Conditions of the Chaplain Corps.**

Counts 7 and 8 of the Consolidated Complaint allege that the Navy has a culture of bias and hostility toward Non-liturgical chaplains.[4] Consol. Compl. ¶¶ 141-52 (Count 7), 153-64 (Count 8). Defendants allege that these counts are broad, vague, and

---

[4] Defendants addressed the alleged culture of bias and the alleged culture of hostility claims separately, but Plaintiffs responded to the claims jointly. Given the similarity of the claims, Defendants' arguments, and Plaintiffs' opposition, the Court will address them jointly as well.

conclusory, and are not limited to a single "transaction or occurrence"--or even a set of transactions and occurrences--as required by Federal Rule of Civil Procedure 10(b). Mot. at 38. As a result of the Counts' conclusory nature and Plaintiffs' failure to allege discrete actions or policies, Defendants also argue that Plaintiffs' allegations do not satisfy the injury-in-fact and redressability requirements of standing. Id.

The thrust of Defendants' argument is that no Plaintiff can establish that he or she sustained any injury as a result of the alleged culture of bias and hostility, rather than as a result of a more specific action or policy. Id. 39-40. For example, Defendants contend that a chaplain who was non-selected for promotion would not be injured by an alleged culture of bias, but by the decision of the selection board. And a chaplain who suffered retaliation by a supervisor would not be injured by a culture of hostility, but by the actions of the supervisor. Id. at 40.

Plaintiffs respond by outlining instances of alleged harms against plaintiffs and other individuals, such as: "religious persecution and oppression from CAPT Buchmiller" against chaplains, congregants, civilian volunteers, and chapel workers; a "racially biased, career ending fitness report" against a non-Plaintiff individual; the allegation that Captain Young "destroyed the careers of all evangelicals while unabashedly promoting and advancing his fellow Catholic chaplains at the expense of [four

Plaintiffs]"; and instances of retaliation. See Opp'n at 51-52. While these instances of alleged harm, if true, might be problematic, Plaintiffs fail to show how and what harms stem from the Navy's "culture." In other words, Plaintiffs do not identify injuries-in-fact that are a result of the amorphous "culture," rather than specific actions.

Plaintiffs also fail to specify what remedies the Court could provide to any injuries resulting from the alleged cultures of bias and hostility. Defendants argue that an injunction prohibiting the continuation of a culture of bias or a declaratory judgment finding such a culture to be unconstitutional would be too vague and ill-defined to provide a remedy. Mot. at 40, 43. Plaintiffs' only responses are two general statements that "[a] court can remedy Plaintiffs['] injuries and harms, and protect AGC's future chaplains from such abuse," Opp'n at 53, and that the "Complaint describes Plaintiffs' injuries by this culture and the court can provide a remedy." Opp'n at 55. Such responses offer no specificity or detail as to the remedies Plaintiffs seek and fail to substantively respond to Defendants' argument.

The absence of a causal relationship between the injuries alleged and the alleged culture of bias and hostility, as well as the failure to identify a single potential remedy that would redress Plaintiffs' injuries, leads the Court to conclude that

Plaintiffs have failed to establish standing to challenge the alleged cultures of bias and hostility.

**C.   Challenges to _Ad Hoc_ Actions Against Certain Plaintiffs**

The final category of claims that Defendants challenge consists of claims alleging _ad hoc_ actions against certain Plaintiffs. Defendants argue that certain claims fail for jurisdictional reasons including untimeliness, lack of standing, and mootness. Mot. at 43.

**1.   Alleged Failure to Consider Prior Officer Fitness Reports**

Count 4 of the Consolidated Complaint alleges that many aspects of chaplain selection board systems violate the First and Fifth Amendments, as well as the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq. Consol. Compl. ¶¶ 73-103. Section D of Count 4 discusses evidence of religious discrimination in chaplain promotions, including a claim that promotion board results show a distinct bias and hostility toward Non-liturgical chaplains with prior military service. Id. ¶ 102.

Several Plaintiffs served in the military prior to being commissioned as chaplains, and as a result, have fitness reports that predate their tenure as chaplains. See, e.g., Addendum 1 ¶ 60 (claims of James Weibling). Plaintiffs' allegation is that the promotion boards failed to consider fitness reports from Plaintiffs' military service before they became chaplains. Consol.

Compl. ¶ 102.  Defendants argue that Plaintiffs lack standing to
bring this claim because they neglect to allege an injury under
the Constitution or RFRA.

The Complaint does not allege that Non-liturgical chaplains
were treated differently than other chaplains with regard to
consideration of prior fitness reports. Mot. at 44; Consol. Compl.
¶ 102. According to Plaintiffs' Opposition, 27 Plaintiffs did not
have prior fitness reports considered, which "lays out a disparate
impact claim for the Non-liturgical chaplains and provides the
basis for [Count 4's] Establishment and Due Process claims
concerning the challenged selection board policies and results."
Opp'n at 55. Plaintiffs fail to identify which individuals' prior
fitness reports were not considered and what the resulting injury
was.

Defendants argue that, of the Plaintiffs who allege prior
commissioned service, only two (Rush and Cason) allege any facts
that would suggest they were injured by a failure to consider their
prior fitness reports. Mot. at 45. Plaintiffs do not dispute that
no Plaintiffs other than Rush and Carson allege any supporting
facts, with the sole exception of Plaintiff Weibling. Opp'n at 55-
56.

Plaintiff Carson alleges only that the Navy turned "her prior
military service into a detriment and liability," which Defendants
argue is too conclusory to be credited as true. Mot. at 45-46

(citing Addendum A ¶ 9). In addition to being conclusory, the allegation that her prior service was a "liability" suggests-- contrary to Plaintiffs' other allegations--that her fitness reports were in fact considered.

Similarly, Plaintiff Weibling alleges that the Navy considered his prior service a liability without further elaboration. Addendum A ¶ 60. In their Opposition, Plaintiffs state that Weibling "was told his small number of CHC fitness reports was a reason for his non-selection," but provide no citation or support for this allegation. Opp'n at 56. The Court agrees that Carson and Weibling's claims are too vague and conclusory to find an injury-in-fact.

Plaintiff Rush alleges that the Navy "counted his prior line officer service to place him before the chaplain promotion board, then disregarded his fitness reports as a line officer . . . . Because the other chaplains had more reports as chaplains, he was non-competitive for promotion." Addendum A ¶ 49. Unlike Weibling and Carson, Rush's allegation is detailed and supports Plaintiffs' claim that prior fitness reports were not considered. However, there is no information identifying the source of the information that Rush's prior fitness reports were disregarded.

As evidence of disparate treatment, Plaintiffs point to the 1997 Memorandum for the Chief of Naval Personnel from Captain J.N. Stafford ("Stafford Report"), Dkt. No. 132-19. The Stafford Report

examined the failure to promote Lieutenant Commander Aufderheide (who is not a plaintiff) and concludes that the failure to promote was a result of a discriminatory evaluation by the FY-97 and FY-98 Selection Boards. Id. The Stafford Report includes a Performance Assessment chart listing the total number of "B" and "C" grades received by the selectees from both Selection Boards and Lieutenant Commander Aufderheide.

Two individuals on the Performance Assessment chart have 30 "B" grades--Liturgical chaplains H. Griffith and Alan Baker. Plaintiffs allege, without any citation, that such a large number of grades was not possible in Griffith and Baker's time with the Chaplain Corps alone. Opp'n at 56.  Plaintiffs imply that prior fitness reports for Baker and Griffith must have been considered in order for them to have 30 Bs, otherwise they would have had less.

Plaintiffs provide no evidence regarding how long Griffith and Baker were with the Chaplain Corps and do not explain how they reached the conclusion that 30 Bs were not possible based on their tenure with the Chaplain Corps alone. While it is true that most individuals listed on the Performance Assessment Chart have well under 30 grades and that those individuals with 30 or more grades are outliers, without more information or evidence, it is purely speculative to conclude that this is due to the inclusion of prior fitness reports.

Even taking as true Rush's allegation that his prior fitness reports were not considered, Plaintiffs still have not provided sufficient evidence that the prior fitness reports of Catholic and Liturgical chaplains were considered, and therefore have not shown a disparate impact. Plaintiffs' conclusion that the prior fitness reports of Griffith and Baker were considered is unsupported. Even if they were considered, Plaintiffs' own pleadings that the prior service of Carson and Weibling was detrimental to their promotion prospects suggests that their prior service was in fact considered. Finally, Defendants argue that Rush's claim is outside the limitations period, as he was considered for promotion in 1993, well before the April 28, 2000 cutoff for Adair claims. Plaintiffs did not respond to this argument and thus, have conceded it.

For all the foregoing reasons, the Court finds that Plaintiffs have failed to establish an injury-in-fact caused by disparate consideration of prior fitness reports and therefore lack standing. In addition, the Court finds Plaintiff Rush's claim to be time-barred.

### 2. Alleged Interference with Certain Plaintiffs' Ministries

Counts 7 and 10 of the Consolidated Complaint have, interspersed throughout them, allegations of several remaining Plaintiffs that the Navy interfered with their respective ministries, in violation of the Establishment, Free Exercise, Free

Speech, and Due Process clauses of the Constitution. Consol. Compl. ¶¶ 150-52, 162, 174-76. Defendants argue that many of these claims are time-barred and that Plaintiffs lack standing because they cannot show injury or redressability. Mot. at 47.

The claims of Plaintiffs Belt and Wilder (Adair) and Plaintiff Bailey (Gibson) are time-barred, Defendants argue, as they accrued before their respective March 17, 1994, and April 28, 2000, cut-offs. Id. at 48. Plaintiffs do not argue otherwise and therefore the Court dismisses the claims of these three plaintiffs for interference with their ministries.

For the remaining Plaintiffs, Defendants argue that they have shown no injury attributable to the alleged interference with their respective ministries, or how the Court could remedy any injuries. Mot. at 48. Defendants argue that the remaining Plaintiffs' claims either do not allege an injury or are too conclusory to establish standing. Mot. at 48-49.

The Court agrees that Plaintiffs DeMarco and Gordy make no allegation of interference with their ministries, Addendum A ¶¶ 10, 18, and that Plaintiff Dufour's statement that his "command chaplain undermined [his] ministry and career," id. ¶ 13, is too conclusory to support standing. While Plaintiff Stewart says that he was told he was "not liturgical enough," he does not state that this interfered with his ministry. Id. ¶ 52. In their Opposition,

Plaintiffs do not identify any additional injuries or elaborate on Plaintiffs' claims. See Opp'n 56-57.

Plaintiffs have failed to identify any Plaintiff who claims an injury as a result of interference with his or her ministry and whose claim is not time-barred. Accordingly, Plaintiffs have failed to establish standing to bring this claim.

### 3.   Alleged Interference with Prayer

Count 9 of the Consolidated Complaint claims that the Navy discriminates against Non-liturgical chaplains by interfering with their free speech rights and interfering with their form of prayer. Consol. Compl. ¶¶ 165-71. The Consolidated Complaint identifies six Plaintiffs by name who were allegedly harmed by interference with their prayers. The claims of two of these Plaintiffs, Johnston and Thyrion, have already been determined to be time-barred in their entirety. Mot. at 50 n. 23.

With respect to the four remaining Plaintiffs, Defendants argue that none of their "allegations of interference suggest the injury-in-fact or potential redress necessary to bring the particular claims based on such allegations within the Court's subject-matter jurisdiction." Mot. at 50. Plaintiffs Belt, Rush, and Torralva fail to allege any interference whatsoever with their prayer. Addendum A ¶¶ 4, 49, 54.

Plaintiff DeMarco alleges that he was criticized for ending his prayers "in Jesus name." Id. ¶ 10. When he continued to pray

"in accordance with his beliefs and religious tradition . . . the Liturgical command chaplain rated him in a way that made him non-competitive for promotion." Id. In DeMarco's deposition testimony, he stated that, after the fitness report rating him, but prior to being considered for promotion, he submitted a request for retirement that was approved. See Deposition of Gregory DeMarco, Exhibit I, 116-18 [Dkt. No. 217-9] ("DeMarco Dep."). The fact that he retired prior to consideration of his promotion is evidence, Defendants argue, that any criticism of his prayer could not have affected his promotion or his career. Mot. at 51.

Defendants' argument overlooks the fact that the criticism need not affect his promotion to be injurious to his career. Indeed, DeMarco states that because he thought the fitness reports would prevent him from being promoted and that his career was effectively over, he was motivated to retire. DeMarco Dep. at 118-19.

Plaintiff Stewart, discussed above in relation to Count 10 (interference with his ministry), while not named in Count 9 regarding interference with his prayer, does allege that he was reprimanded for praying "in Jesus' name" and that after concluding a prayer with "I pray in the name of my Lord and my Savior," he was relieved of his duties. Addendum A ¶ 52. The allegations of Plaintiffs DeMarco and Stewart are sufficient to show injury as a result of interference with prayer.

Defendants also question the Court's ability to redress Plaintiffs' injuries, but provide no explanation or support for that argument. See Mot. at 50. In turn, Plaintiffs failed to respond to it in their Opposition. See Opp'n at 57-58. Given the paucity of Defendants' argument, the Court is not willing to find the argument conceded.

The Consolidated Complaint contains several examples of potential remedies for the alleged injuries Plaintiffs suffered as a result of interference with their prayers: a Declaration by the Court that the Navy discriminates against Plaintiffs' free speech; an injunction requiring the Navy to establish policies and procedures protecting chaplains' free speech; and specific remedies to address damage to individual careers. Consol. Compl. at 115. It is not readily apparent, nor have Defendants provided any reasons, why the Court would find these remedies to be inadequate or unfeasible.

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently alleged injury-in-fact and redressability to support standing.

### D.   Portions of Claims of Specific Plaintiffs

Lastly, Defendants argue that the claims of specific Plaintiffs should be partially or entirely dismissed as time-barred or for failure to exhaust administrative remedies. Mot. at 51-21.

1.   Statute of Limitations

a.   _Adair_ Plaintiff Rush

_Adair_ Plaintiff Rush's claims are based on non-selections by selection boards convened in 1992 and 1993. Mot. at 53 (citing Mot. Ex. J, Declaration of David Lanham, Feb. 25, 2015 ("Lanham Decl.") ¶ 18 [Dkt. No. 217-10]). Defendants argue that both of these non-selections fall outside of the _Adair_ limitations-period cut-off of March 17, 1994. Plaintiffs counter that Rush "was discharged on the basis of his failure of selection within the [statute of limitations]." Opp'n at 60. Plaintiffs do not identify when precisely Rush was discharged, making it difficult to verify that his claim is within the statute of limitations. The Consolidated Complaint states that Rush was non-selected in 1994, but it does not say when in 1994. Due to the fact that Plaintiffs have not shown that Rush's claims are within the Adair statute of limitations period, Rush's non-selection for promotion to Lieutenant Commander claims are dismissed.

b.   **_Gibson_ Plaintiffs Demy, Garner, Johnson, Jones, Lancaster, Marsh, and Mitchell**

Defendants argue that Plaintiffs' challenges to selection boards up to and including FY 2000 are time-barred because the boards' decisions were issued prior to the _Gibson_ limitations cut-off of April 28, 2000. See Mot. at 55-59. The selection boards for FY 2000 met and issued their decisions in 1999. The earliest non-time-barred selection boards would therefore be for FY 2001.

Plaintiffs did not respond to this argument and have therefore conceded it.

Plaintiff Demy was non-selected for promotion by the FY 2000 through 2009 Captain boards See Addendum A ¶ 6; Lanham Decl. ¶ 5. His challenge to the FY 2000 selection board is dismissed. Plaintiff Garner was non-selected for promotion by the FY 2000 through 2003 Lieutenant Commander boards. See Addendum A ¶ 16; Lanham Decl. ¶ 7. His challenge to the FY 2000 selection board is dismissed. Plaintiff Johnson was non-selected for promotion by the FY 2000 through 2005 Captain boards. See Addendum A ¶ 24; Lanham Decl. ¶ 9. His challenge to the FY 2000 selection board is dismissed. Plaintiff Jones was non-selected for promotion by the FY 2000 through 2007 Commander boards. See Addendum A ¶ 26; Lanham Decl. ¶ 10. His challenge to the FY 2000 selection board is dismissed. Plaintiff Lancaster was non-selected for promotion by the FY 1998 through 2002 Captain boards. See Addendum A ¶ 32; Lanham Decl. ¶ 11. His challenges to the FY 1998-2000 selection boards are dismissed. Plaintiff Marsh was non-selected for promotion by the FY 1996 through 2004 Commander boards. See Addendum A ¶ 37; Lanham Decl. ¶ 13. His challenges to the FY 1996-2000 selection boards are dismissed. Plaintiff Mitchell was non-selected for promotion by the FY 2000 through 2002 Commander boards. See Addendum A ¶ 39; Lanham Decl. ¶ 14. His challenges to the FY 1996-2000 selection boards are dismissed.

### 2.   Exhaustion of Administrative Remedies

Defendants argue that the Court lacks jurisdiction over the non-selection for promotion claims of numerous Plaintiffs because Plaintiffs failed to exhaust their administrative remedies. As discussed in Section I.B., chaplains must be selected for promotion in rank when the needs of the service require, and if they fail to select two or more times, they may be subject to selective early retirement. 10 U.S.C. §§ 611(a), 632. If a person is considered by a selection board but is not selected for promotion, he or she may challenge the decision of the selection board pursuant to an administrative review scheme. 10 U.S.C. § 628. The Secretary of the Navy is authorized under § 628 to convene a special selection board ("SSB") if the Secretary determines "that there was material unfairness with respect to that person." 10 U.S.C. § 628(b)(1). If the Secretary determines an SSB is warranted, the SSB then considers the record of the person "as that record, if corrected, would have appeared to the board that considered him." Id. § 628(b)(2).

On December 28, 2001, a revised version of § 628 became effective. As revised, a person must exhaust his or her remedies as set forth in § 628(g) and (h) before a court of the United States may consider a claim "based to any extent on the failure of a person to be selected for promotion by a promotion board." 10 U.S.C. § 628(h).

Defendants argue that § 628's exhaustion requirement is jurisdictional, and that any challenge to a decision by a promotion board made after December 28, 2001, must be dismissed for lack of subject matter jurisdiction because Plaintiffs did not exhaust their administrative remedies. Mot. at 52. Indeed, Judge Urbina has already ruled as much in this very case. See Memorandum Opinion on Motions to Alter or Amend and Motion for Partial Dismissal ("Partial Dismissal Mem. Op."), [Dkt. No. 113] ("a court lacks jurisdiction to review decisions by the promotion boards and special selection boards if a plaintiff fails to exhaust his or her administrative remedies under [10 U.S.C.] § 1558 and § 628"). The Sixth Circuit reached the same conclusion in Harkness v. United States, where it found the exhaustion requirement to be jurisdictional. 727 F.3d 465, 469-72 (6th Cir. 2013).

Plaintiffs counter that Judge Urbina has twice previously rejected Defendants' arguments to dismiss their non-selection for promotion claims. Plaintiffs do not dispute that § 628(h) is jurisdictional, but rather argue that their claims continue to fall within the statutory exception, as previously determined in this case. Opp'n 58-60 (citing Memorandum Opinion Denying Preliminary Injunction ("Prelim. Injunction Mem. Op.") at 8 [Dkt. No. 108]). "[U]nder § 1558(g) and § 628(i), a court retains jurisdiction to review the actions by a selection or promotion board so long as the claim seeks judicial review of the 'validity

of any law, regulation, or policy relating to selection boards.'" Partial Dismissal Mem. Op. at 24 (quoting 10 U.S.C. §§ 1558(g), 628(i)).

In his first decision addressing this issue, Judge Urbina held that Plaintiffs' challenges to "the policies used by the Navy to determine the composition and decision-making of the promotion boards" fell within the § 628(i) exception, and therefore the Court had jurisdiction to review the claims. Prelim. Injunction Mem. Op. at 8. In the second decision on this issue, Judge Urbina found that Counts One, Two, and Three of the Gibson Amended Complaint [6-cv-2102, Dkt. No. 13] challenged the validity of "policies used by the Navy to determine the composition and guide the decision-making" of selection boards, and therefore the Court maintained its jurisdiction over the claims pursuant to the statutory exception. Partial Dismissal Mem. Op. at 25-26.

Since the time of Judge Urbina's decisions, the case has been reassigned to the undersigned Judge and Plaintiffs have filed their Consolidated Complaint, which is now the operative complaint for the three combined cases. While Judge Urbina's reasoning in the above decisions is still the law of the case, it is not readily apparent that the claims Defendants seek to have dismissed are the same as those claims the Court previously found to be within the statutory exception. Plaintiffs state that the promotion policies

challenged previously are the same ones currently being challenged, see Opp'n at 59.

Defendants' Motion lays out the specific factual allegations of particular Plaintiffs in detail. Defendants then argue that resolution of each Plaintiff's claims does not require consideration of selection board policies and therefore the Court does not have jurisdiction over their claims. Mot. at 53-54. For example, Plaintiff Looby claims his non-selection was attributable to an unfounded rumor that he "had been injured on active duty, was ineligible for promotion and had performance problems," Addendum A ¶35. Plaintiff Roman alleges that he was not selected for promotion because he had sued the Navy over religious discrimination. Id. ¶ 47. He also alleges that his failure to select was due to "the animosity of the CHC leadership against his endorsing agency, CFGC, and the ability of one board member to ruin a chaplain's career with no accountability." Id.

While Defendants are correct that adjudication of Plaintiffs' non-selection claims on these facts alone would not require the Court to consider the validity of any selection board policies, these facts are not the only non-selection allegations Plaintiffs have made. Plaintiffs have also alleged that several selection board policies and systems are unconstitutional, and that these policies are common to all Plaintiffs. See e.g., Consol. Compl. Count 4 (size, staffing, and voting system of selection boards).

The fact that individual Plaintiffs have alleged additional facts and theories for their non-selections does not negate their challenges to the policies.

Since Plaintiffs' non-selection for promotion claims challenge policies relating to selection boards and therefore fall within the exception to the exhaustion of administrative remedies requirement, see 10 U.S.C. § 628(h), (i), Defendants' Motion to Dismiss Plaintiffs' non-selection for promotion claims for failure to exhaust and lack of jurisdiction shall be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss shall be **granted in part and denied in part**. An Order shall accompany this Memorandum Opinion.


March 16, 2016                     Gladys Kessler
                                   United States District Judge




**Copies to**: attorneys on record via ECF